KERR CENTRAL APPRAISAL DISTRICT; Juanita Maples, as Chief Appraiser of Kerr Central Appraisal District, in Her Official Capacity; the Board of Review for the Kerr Central Appraisal District, Appellants,

v.

George T. Broun STACY, Gretchen Broun Stacy, Philip Stacy, Wm. G. Stacy, III & Carletta C. Stacy Janke, Appellees.

No. 04–88–00586–CV.

Court of Appeals of Texas, San Antonio.

July 12, 1989.

Rehearing Denied Aug. 21, 1989.

Judith Knies, Russell R. Graham, Austin, for appellants.

Stephen B. Ables, David L. Jackson, Kerrville, for appellees.

Before BUTTS, CHAPA and BIERY, JJ.

## OPINION

CHAPA, Justice.

This is a taxation case. Kerr Central Appraisal District and Kerr County Appraisal Review Board appeal from a trial court ruling that certain land belonging to appellees George T. Broun Stacy, Gretchen Broun Stacy, Philip Stacy, William G. Stacy, III, and Carletta Stacy Janke, qualifies for "Open–Space Land" appraisal, the result of which allows appellees to receive a substantial reduction of their tax liability.

The primary question before this Court is whether property, which is leased for the sole purpose of grazing horses (which are used only for recreational pur-

poses), qualifies as "Open–Space Land" pursuant to the TEX.TAX.PROP. CODE § 23.51 (Vernon 1982).

The property in dispute is a 316.51 acre tract located in Kerr County. Since 1978, the Stacys have leased the property to a neighboring boys camp, Camp Rio Vista, for grazing rights. The horses, approximately 30–40 in number, are owned by the camp and are used for recreational riding. The Stacys have also raised four to five cattle on the property since 1985. In both 1986 and 1987, the Stacys appealed the Kerr Central Appraisal District's denial of the Stacys' request for "Open–Space" or "Ag" valuation of the property. The appeals were consolidated and trial was had before the court, which held that the land met the requirements for this type of qualification.

In its first point of error, the Appraisal District argues that the court erred in holding that the property qualifies as open-space land because the evidence establishes that the property is not currently devoted principally to agricultural use.

Generally, property is appraised for ad valorem tax purposes at its market value. TEX.CONST. art. VIII, § 1; TEX.TAX CODE ANN. § 23.01(a) (Vernon 1982). Pursuant to a constitutional amendment, a special appraisal method is provided for owners of qualified open-space land. Art. VIII, § 1–d–1 provides:

> To promote the preservation of open-space land, the legislature shall provide by general law for taxation of open-space land devoted to farm or ranch purposes on the basis of its productive capacity.... The legislature by general law may provide eligibility limitations under this section....

TEX.TAX. CODE ANN. § 23.51 provides:

> (1) "Qualified open-space land" means land that is *currently devoted principally to agricultural use to the degree of intensity generally accepted in the area and that has been devoted* principally to *agricultural use* ... for five of the preceding seven years ...
>
> (2) *"Agricultural use" includes* but is not limited to the following activities:

cultivating the soil, *producing crops for human food, animal feed,* or planting seed for the production of fibers; floriculture, viticulture, and horticulture; *raising or keeping livestock;* raising or keeping exotic animals for the production of human food or fiber, leather pelts, or other tangible products having a commercial value; and planting cover crops or leaving land idle for the purpose of participating in any governmental program or normal corp or livestock rotation procedure. (emphasis added)

The State Property Tax Board, by authority of TEX.TAX CODE ANN. § 23.52, promulgated guidelines with respect to this subject in 1982. These guidelines provide the requirements for eligibility:

(6) For the purpose of determining 1–d–1 qualification, the State Property Tax Board has adopted these definitions:

a. "agricultural use" shall mean the same as and be synonymous with *"farm or ranch purposes"* as that phrase is found in Art. VIII, Sec. 1–d–1 of the Texas Constitution. The meaning of the phrase or term is that recognized by Texas courts in decisions arising out of interpretation of Art. VIII, Sec. 1–d of the Texas Constitution.

b. "Agricultural use to the degree of intensity generally accepted in the area" shall mean farming or ranching to the extent that the typically prudent manager in the area of the taxing unit would farm or ranch on an identifiable and substantial tract of land when the tract is devoted principally to agricultural use.

c. "Principally" or "Principal use" shall mean the more important use in comparison with other uses to which the land is put.

d. "Livestock" shall mean animals of any kind *kept or raised;* such as, but limited to, meat and dairy cattle, horses, goats, sheep, chickens, axis deer, mouflon sheep, and other animals, but expressly excludes those animals, such as wild deer and wild turkey, owned by the State of Texas and classified as wild animals indigenous to this State. (emphasis added)

Both parties agree that under the statutory definition of "agricultural use," the only activity that is described in the statute which possibly meets the activity taking place on appellees' land is "raising or keeping livestock." "Livestock" is defined by the foregoing guidelines as including "animals of any kind *kept or raised* such as, but not limited to ... horses...."

We are faced here with two opposite interpretations of the same, seemingly straightforward, statute. On the one hand, the appraisal district advances a "product theory" which would require a landowner to show that some agricultural product was produced in order to qualify for open-space land valuation. On the other hand, the Stacys submit that it is not the product of the land which is determinative; rather, it is the use of the land which must be scrutinized. This argument can be characterized as a "use theory."

The 1988 Manual for the Appraisal of Agricultural Land developed by the State Property Tax Board provides some additional guidance for determining valuation:

Land used primarily to raise or keep horses qualifies for agricultural appraisal. Land used primarily to train, show or race horses, to ride horses for recreation, or to keep or use horses in some other manner that is not strictly incidental to breeding or raising horses does not qualify. Similarly, land used as a stable, where horses are kept, fed and cared for, is not being used primarily for an agricultural purpose, unless the stable is incidental to breeding and raising horses.

Manual for the Appraisal of Agricultural Land (1988, p. 11) (Emphasis added).

The Appraisal District submits that these additional guidelines provide insight to show that the Board is "continuing its policy of disqualifying land that is used for non-farm or ranch purposes." The interpretation of farm or ranch purposes means, in appellant's view, "production of agricultural products." Hence, appellant would have this Court interpret the statute to require a landowner to actually show that an agricultural product has been produced on the land in order to fall within the

boundaries of "farm or ranch purposes." For the reasons set forth below, we decline to adopt such a harsh, far-reaching standard.

The trial court found that Question 20 of the 1988 manual was applicable to the facts of the instant case:

Q. Thoroughbred horses are bred and raised on a 500 acre tract of land. The horses graze on 450 acres, 40 acres are used to raise grain to feed the horses, and a stable where the horses and supplies related to them are kept occupies five acres. Another five acres is set aside for training the horses to race and includes a running track. The land is primarily used to breed and raise horses, and is used to the degree of intensity typical for the area. May all or part of the land qualify for special use appraisal?

A. The 490 acres upon which the horses are bred and grazed and where feed for them is grown qualifies. This land is used directly for raising, breeding, and supporting horses—all agricultural purposes. The land holding the stables also qualifies, because this area is used to support the raising of horses. The land where the horses are trained for racing, however, does not qualify. This is not an agricultural use of land.

This explanation clearly indicates that land used for recreational purposes such as training or racing does not qualify because it is not an agricultural use. However, the remaining acreage does meet the requirements because it is being used for agricultural purposes, such as raising and supporting horses, *which includes breeding and grazing*. It is important to note that no agricultural product is mentioned; the absence of which, we believe, renders the appellant's "product theory" untenable.

Appellants point to one of this Court's cases, *Bowers v. Edwards County Appraisal District*, 697 S.W.2d 528 (Tex.App.—San Antonio 1985, no writ), and contend that this case is instructive, because this Court upheld the validity of Property Tax Board's definition of "livestock" which, it claims, requires that the animals in ques-

tion be "keep or raised" for an agricultural purpose, i.e., for the production of agricultural products. We do not find that *Bowers* supports the proposition that "agricultural use" within the meaning of the Tax Property Code mandates that the land being valuated must be devoted to the production of agricultural products. To do so would severely curtail a landowner's ability to use his land for an agricultural use in order to be entitled to a tax benefit.

Simply because the horses in the instant case are used for recreational purposes does not indicate that the land itself is being used for recreational purposes. The evidence in the record includes a letter from a director of Camp Rio Vista, which verifies that the Camp has leased the Stacy's property for the purpose of grazing, and makes no mention of any recreational activity taking place on the land. If it were true that because the animals were being used for recreational purposes outside the land that the statutory provisions would not be met, then a landowner would be placed under an unduly cumbersome or even impossible burden of tracing the use of each individual animal after it leaves the property and requiring that it be used solely for an agricultural purpose. For example, if a landowner raised and bred 200 horses on his land, 100 of which were then taken to a nearby racetrack for recreational purposes, the other 100 of which were sold to another ranch owner for use on his land, then the owner would only be entitled to have one-half of his acreage qualify as open-space land, which would be an inequitable result. We find, therefore, that the trial court did not abuse its discretion in determining that the Stacys' land met the requirements of "open-space land" for ad valorum tax evaluation purposes.

Further, we note that TEX.TAX PROP. CODE § 23.51(2) includes in its definition of "Agricultural Use" the production of crops for animal feed. We see no distinction between a landowner growing and selling grass for animal feed and a landowner growing grass on his own land for the purpose of feeding animals. Therefore, appellants' "product theory" is rendered even weaker because in reality, a product, (grass

to feed horses) is being produced on appellees' land.

■ Finally, appellants contest the award of attorney fees to the Stacys in the event of appeal. The trial court denied the Stacys' request for attorneys fees at the trial level, but awarded them attorney fees in the event of an appeal.

■ Attorney fees are not recoverable unless provided for by statute or by contract between the parties. *New Amsterdam Casualty Co. v. Texas Industries, Inc.*, 414 S.W.2d 914 (Tex.1967). Moreover, statutory provisions allowing recovery of attorney fees must be subject to strict construction. *Van Zandt v. Fort Worth Press*, 359 S.W.2d 893 (Tex.1962). Therefore, we must look to the applicable Tax Property Code provisions for guidance.

### § 42.29. Attorney's Fees

A taxpayer who prevails in an appeal to the court under Section 42.25 or Section 42.26 of this code may be awarded reasonable attorney's fees not to exceed the greater of $5,000 or 20 percent of the total amount of taxes in dispute.

Sections 42.25 and 42.26 provides as follows:

**§ 42.25. Remedy for Excessive Appraisal.** If the court determines that the appraised value of the property according to the appraisal roll exceeds the appraised value required by law, the property owner is entitled to a reduction of the appraised value on the appraisal roll to the appraised value determined by the court.

**§ 42.26. Remedy for Unequal Appraisal.** The district may not grant relief on the ground that a property is appraised unequally in comparison to the level of appraisals of other property in the appraisal district unless the appraised value of the property varies at least 10 percent from its value calculated on the basis of the median level of appraisal of other properties in the district. In that event, the court shall order the appraised value changed to the value as calculated on the basis of the median level of appraisal of those properties.

Excessive appraisal and unequal appraisal are only two of the actions a property owner is entitled to protest. Another of those actions involves the question raised in the present appeal, that being whether property qualifies for appraisal as open-space land. In accordance with § 41.41, a landowner is entitled to protest any of the following actions:

**§ 41.41. Right of Protest.** A property owner is entitled to protest before the appraisal review board the following actions:

(1) determination of the appraised value of his property or, in the case of land appraised as provided by Subchapter C, D or E, Chapter 23 of this code, determination of its appraised or market value;

(2) unequal appraisal of his property in comparison to the median level of appraisals of other property in the appraisal district;

(3) inclusion of his property on the appraisal rolls;

(4) denial to him in whole or in part of a partial exemption;

(5) determination that this land does not qualify for appraisal as provided by Subchapter C, D or E, Chapter 23 of this code;

(6) identification of the taxing units in which his property is taxable in the case of the appraisal district's appraisal roll;

(7) determination that he is the owner of property; or

(8) any other action that applies to the property owner and adversely affects him.

Clearly, an action for unequal appraisal or excessive appraisal under § 41.41(1) or § 41.41(2) is separate and distinct from an action for qualification of appraisal, as provided by § 41.41(5). Because the provisions must be strictly complied with, we find no authority in the statute for the granting of attorney fees in the type of action brought by appellee. Therefore, the award of attorney fees at the appellate level was improper. The point is sustained.

By a single cross-point, appellees allege that the court erred in not granting attorney fees at the trial stage. Because of the disposition of appellant's third point of error, this point is meritless.

The judgment of the trial court is reformed so as to delete the award of attorney fees and affirmed in all other respects.