**DALLAS CENTRAL APPRAISAL DISTRICT and Dallas County Appraisal Review Board, Appellants,**

v.

**SEVEN INVESTMENT COMPANY and the Callejo–Botello Foundation, Appellees.**

No. 05–90–00746–CV.

Court of Appeals of Texas, Dallas.

July 2, 1991.

Rehearing Overruled Aug. 13, 1991.

Peter G. Smith, Dallas, for appellants.

Alan S. Notinger, Richard A. Dean, Dallas, for appellees.

Before ROWE, LAGARDE, and OVARD, JJ.

## OPINION

LAGARDE, Justice.

Dallas Central Appraisal District and Dallas County Appraisal Review Board (collectively referred to as the "appraisal unit")[1] appeal from a judgment granting open-space land designation to property owned by Seven Investment Company and the Callejo–Botello Foundation (collectively referred to as the "taxpayers").[2] The trial court rendered partial summary judgment denying the open-space land designation for two of the tax years. After a bench trial, the trial court granted the open-space land designation for the four remaining tax years. On appeal, the appraisal unit asserts, in twenty points of error, that: (1) the trial court erred in finding that the property qualified for open-space land designation for tax years 1985 through 1988;

---

1. When necessary, we will refer to the Dallas Central Appraisal District individually as the District and the Dallas County Appraisal Review Board individually as the Board.

2. When necessary, we will refer to the Callejo–Botello Foundation individually as the Foundation.

(2) it was denied trial de novo review because of the admission of certain evidence; (3) the trial court erred in considering tax years 1985 and 1986 because the taxpayers paid the ad valorem taxes in full for those years; and (4) the trial court erred in awarding attorney's fees. In a cross point, the taxpayers assert that the trial court erred in granting partial summary judgment in favor of the appraisal unit for tax years 1983 and 1984. Finding no error in the judgment, we affirm.

## BACKGROUND

The approximately forty-six acres of real property involved in this litigation are located in Garland, Texas. Seven Investment acquired the property in 1965 and was the sole owner until 1987 when the Foundation, a charitable trust, became a part owner. Upon acquisition of the property, Seven Investment began farming the property. As a result of a constitutional amendment, open-space land designation became available in 1979 to offer tax savings for farming activities. The local taxing unit granted the open-space land designation for the property for the 1979, 1980, and 1981 tax years.

In 1982, the District became responsible for appraising the property and granted the open-space land designation for that year. The District initially granted the open-space land designation for the property for the 1983 and 1984 tax years, but withdrew these designations in 1986. Because Seven Investment failed to file a timely written protest to the retroactive revocation of these designations with the Board, the trial court concluded that it did not have jurisdiction to consider the claims for 1983 and 1984. It granted partial summary judgment for these tax years in favor of the appraisal unit.

The District refused to qualify the property as open-space land for tax years 1985, 1986, and 1987. After unsuccessfully protesting to the Board and exhausting all of their administrative remedies, the taxpayers filed suit contesting the District's failure to qualify the property as open-space land for each of those tax years.

Beginning in late 1987 and continuing on into 1988, the City of Garland constructed a public road that cut through a portion of the property. Because of the road construction, the taxpayers could use only the southern portion of the property in 1988. The District refused to qualify the property as open-space land for 1988. Again, after filing a protest with the Board and exhausting all administrative remedies, the taxpayers filed suit contesting the District's failure to grant the open-space land designation for 1988.

The taxpayers' claims for tax years 1983 through 1988 were consolidated into one cause for trial. As noted earlier, the trial court granted partial summary judgment in favor of the appraisal unit for tax years 1983 and 1984 on jurisdictional grounds. The remaining four tax years were tried to the court without a jury. The trial court found that the property qualified for the open-space land designation and ordered the appraisal unit to correct the appraisal rolls and tax rolls to reflect such designation. The trial court also ordered the appraisal unit to pay the taxpayers $23,000 as reasonable attorney's fees for litigating their claims for the 1985 through 1988 tax years.

## OPEN–SPACE LAND DESIGNATION

■ In its first fourteen points, the appraisal unit contends that there was no evidence or, alternatively, insufficient evidence to support the trial court's findings that the property qualified as open-space land for tax years 1985 through 1988. In reviewing a no evidence or legal insufficiency point, this Court considers only the evidence favorable to the trial court's findings to determine if there is more than a scintilla of evidence to support those findings. *Nelson v. Dallas Indep. School Dist.*, 774 S.W.2d 380, 382 (Tex.App.—Dallas 1989, writ denied). In reviewing an insufficient evidence or factual insufficiency point, this Court considers all the evidence to determine whether the trial court's findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.*

In a bench trial, the judge is the trier of fact, and it is his or her prerogative and responsibility to weigh the proof and the credibility of the evidence. *Tate v. Commodore County Mutual Ins. Co.*, 767 S.W.2d 219, 224 (Tex.App.—Dallas 1989, writ denied). This Court cannot disturb a trial court's findings of fact if they are supported by any evidence of probative force and, considering all the evidence, are not so against the great weight and preponderance of the evidence as to be manifestly unjust. *Nelson*, 774 S.W.2d at 382. A trial court's findings of fact are binding on this Court even though the evidence is conflicting or even though we may have reached a different conclusion based on the same evidence. *Marriott Corp. v. Azar*, 697 S.W.2d 60, 63 (Tex.App.—El Paso 1985, writ ref'd n.r.e.).

■■■ To qualify as open-space land, the property must be devoted principally to agricultural use to the degree of intensity generally accepted in the area and the property must have been devoted principally to agricultural use for five of the preceding seven years. TEX.TAX CODE ANN. § 23.-51(1) (Vernon Supp.1991). Agricultural use to the degree of intensity generally accepted in the area means farming to the extent that a typically prudent manager in the same area would farm a similar tract of land that is devoted principally to agricultural use. *Kerr Cent. Appraisal Dist. v. Stacy*, 775 S.W.2d 739, 741 (Tex.App.— San Antonio 1989, writ denied). Property located within city limits is not eligible for appraisal as open-space land unless the city does not provide the property with substantially equivalent city services or the property has been devoted principally to agricultural use for the preceding five years. TEX.TAX CODE ANN. § 23.56(1) (Vernon 1982). In satisfying the five-year-history test, a party need only show five previous years of principal agricultural use as opposed to intense agricultural use. *Riess v. Williamson County Appraisal Dist.*, 735 S.W.2d 633, 637–38 (Tex.App.—Austin 1987, writ denied).

The taxpayers' property has been located within city limits at all material times. The taxpayers stipulated that the property received substantially equivalent governmental and proprietary services from Garland, with the exception of water and electricity. If we conclude that there is evidence to support the trial court's findings that the property satisfied the five-year-history in each of the contested tax years, then whether the property received substantially equivalent city services becomes irrelevant.

1. 1985 Tax Year.

To qualify its property as open-space land for 1985, Seven Investment first had to prove that its property was devoted principally to agricultural use to the degree of intensity generally accepted in the area during 1985. The evidence offered in support of this contention showed that G.W. Foster, the tenant farmer of the property for the first part of 1985, was unable to harvest the native grass on the property because of excessive rainfall in the spring. Roy Jackson began farming the property in June 1985 and testified that he obtained one cutting of native grass in the fall of 1985. Junell Pogue, the District's exemption coordinator, and Glynn Miller, the District's appraisal coordinator, testified that native grass hay farming is an agricultural use that may qualify land as open-space land. Pogue also testified that, if adverse weather conditions such as heavy rains exist, a farmer may understandably obtain only one cutting that year.

The appraisal unit offered evidence that its periodic inspections during 1985 revealed weeds, wildflowers, and motorcycle trails on the property, with no indication of agricultural activity. However, Pogue testified that when a farmer is growing hay, the inspectors do not see much activity except when the hay is being cut and baled. Despite the fact that the evidence of agricultural use during 1985 was controverted, Seven Investment did present some probative evidence that the property was devoted principally to agricultural use to the degree of intensity generally accepted in the area. It is for this reason that we will not disturb the trial court's finding on this issue in favor of Seven Investment because Seven Investment did present more than a scintil-

la of evidence to support this finding and, considering all the evidence, we conclude that the finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust. *Nelson,* 774 S.W.2d at 382.

Having found sufficient evidence to support the trial court's finding on agricultural use during 1985, we must now determine whether Seven Investment presented sufficient evidence to support the finding that Seven Investment satisfied the five-year-history requirement. The appraisal unit and Seven Investment do not dispute that the property had a principal agricultural use for tax years 1980, 1981, and 1982. Thus, we need only consider tax years 1983 and 1984 in reviewing the trial court's five-year-history finding.

As noted earlier, the District initially granted the open-space land designation for 1983 and 1984 and then withdrew these designations in 1986 for the reason that Garland had cut high grass or weeds and removed trash from the property. At trial, conflicting evidence was presented concerning the agricultural use of the property during these two years. Scott Smith of the Garland Environmental Code Enforcement Division testified that only a small strip of the property was cut between 1983 and 1985. Smith did not know whether Garland was cutting hay or grass and that it was common for hay farmers to receive citations about high weeds that later turned out to be hay. Callejo testified that he observed only hay crop usage of the entire property during 1983.

Charles Shufelt, a Garland tax assessor, testified that he inspected the property three times in 1983 and that each time it was covered in weeds and sunflowers. However, in a 1986 letter to Pogue, Shufelt stated that the property had an agricultural use in 1983, and in a deposition in May 1989, he stated that he personally would have granted the open-space land designation for 1983. At trial, however, Shufelt testified that the property had no agricultural use in 1983.

The evidence regarding the agricultural use of the property during 1984 showed that Seven Investment's open-space land application was initially granted because the District's field inspector noted that sweet sudan had been planted. David Cleveland, another District employee, testified that the District found both principal agricultural use and degree of intensity for 1984. Cleveland also testified to the contrary and stated that there was no evidence of agricultural activity on the property in 1984. Callejo testified that hay was grown on the property in 1984. Randy Parks and Shufelt, both of whom inspected the property for the District in 1984, testified that they saw only wild grass, weeds, and sunflowers growing on the property. The appraisal unit also presented evidence that Garland mowed weeds on, and filed a lien against, the property in 1984.

The appraisal unit's contention that Seven Investment presented no evidence to support the trial court's affirmative finding on the five-year-history requirement must fail because Seven Investment presented more than a scintilla of evidence to support the finding. *Nelson,* 774 S.W.2d at 382. Further, we will not disturb the trial court's finding on the ground of insufficient evidence because, in light of all the evidence, we conclude the finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.*

2. 1986 Tax Year.

We have concluded that there was sufficient evidence to support the trial court's findings that Seven Investment satisfied both the degree-of-intensity and five-year-history tests for 1985. For this reason, if we find sufficient evidence to support the trial court's affirmative finding on degree of intensity for tax year 1986, then the five-year-history requirement is automatically satisfied. There was conflicting evidence concerning whether the property was devoted principally to agricultural use to the degree of intensity generally accepted in the area during 1986. In support of the trial court's finding, Callejo and Roy Jackson, the tenant farmer on the property in 1986, testified that hay was planted and

harvested. To substantiate his testimony, Jackson supplied photographs of a large number of bales of hay that were on the property in July 1986. Foy Mitchell, Jr., the District's chief appraiser, admitted in writing that the only reason for the District's denial of the 1986 open-space land designation was the inability to satisfy the five-year-history requirement.

Evidence contrary to the trial court's finding showed that Shufelt saw only weeds and sunflowers the three times he inspected the property in 1986. Pogue and Miller testified that in April 1986, they inspected the property and found that only a small portion of one tract had been plowed. We conclude that Seven Investment presented more than a scintilla of evidence that the property was devoted principally to agricultural use to the degree of intensity generally accepted in the area, and, considering all the evidence, we further conclude that the finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust. *Nelson,* 774 S.W.2d at 382. We will not disturb the trial court's finding on this issue. Because of our conclusion on this finding, we conclude further, without discussion, that sufficient evidence supports the finding that Seven Investment satisfied the five-year-history requirement for tax year 1986.

3. 1987 Tax Year.

To show that the property was principally used for agricultural purposes to the degree of intensity generally accepted in the area, Jackson again testified that he grew and harvested hay on the property in 1987. Mitchell again admitted in writing that the District denied the open-space land designation in 1987 solely because of the alleged lack of a five-year-history. The District's contrary evidence was that its inspections of the property in 1987 revealed that only one tract had some cut native grasses, evidencing agricultural activity. The inspectors did not see any bales of hay. Seven Investment counters that the reason the District did not see any bales of hay is because it inspected the property in November, after the harvest. The District's

own manual acknowledges that no activity occurs in hay farming between October and February.

In light of this conflicting probative evidence, we cannot say that the trial court's finding that the property was devoted principally to agricultural use to the degree of intensity generally accepted in the area in 1987 is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Nelson,* 774 S.W.2d at 382. We will not disturb the trial court's finding on this issue. We further hold, without discussion, that evidence supports the finding on the five-year-history requirement favorable to Seven Investment.

4. 1988 Tax Year.

As noted earlier, Garland began constructing a public road through the property at the end of 1987, and this construction continued throughout 1988. Because of the road construction, the taxpayers had to limit their agricultural activities to the southern portion of the property. Ron Spivey and Camille Poteet, who farmed the land for the greater part of 1988, fenced the southern portion and used it to raise cows and horses. Spivey and Poteet contend that they sold livestock raised on the property to the public and that they used some supplemental feeding. Although the District admitted that the number of livestock on the property was sufficient for the acreage and that the use of supplemental feeding does not prevent property from qualifying, it insisted that none of the livestock was sold and that the livestock was fed exclusively with supplemental feed.

Regarding the inability to farm that part of the property on which road construction was taking place, Pogue testified that, under certain circumstances, road construction on part of property will not prevent the entire property from qualifying for the open-space land designation. Pogue's testimony comports with the State Property Tax Board's manual, which provides that, under special situations when agricultural activity is not possible, property remains eligible for agricultural appraisal until the

owner clearly demonstrates an intent to permanently give up agriculture. The taxpayers could not farm that portion of their property on which Garland was constructing a road. Further, until the road construction was completed, the taxpayers could not demonstrate an intent to give up its farming activities.

■ We conclude that the taxpayers presented more than a scintilla of evidence to support the trial court's finding that the property was devoted principally to agricultural use to the degree of intensity generally accepted in the area in 1988 which, when considered with all the evidence, does not render the finding so against the great weight and preponderance of the evidence as to be manifestly unjust. *Nelson*, 774 S.W.2d at 382. We further conclude that the road construction on part of the property does not prevent all of the property from being designated as open-space land. Because we uphold the trial court's affirmative finding on degree of intensity for 1988, we likewise uphold the affirmative finding on the five-year-history requirement.

Accordingly, we overrule the appraisal units first fourteen points attacking the trial court's findings that the taxpayers' property is entitled to the open-space land designation for tax years 1985, 1986, 1987, and 1988.

### VOLUNTARY PAYMENT OF TAXES

■ In points fifteen through seventeen, the appraisal unit contends that Seven Investment has waived its claims for tax years 1985 and 1986 because it voluntarily paid the full taxes for those years. Under the Tax Code, a taxpayer must pay a certain amount of his taxes in order to preserve his right to appeal an order of the appraisal review board. TEX.TAX CODE ANN. § 42.08(b) (Vernon Supp.1991). Texas courts have applied the voluntary payment rule to preclude review of taxes that a taxpayer has paid in full. *Hunt County Tax Appraisal Dist. v. Rubbermaid, Inc.,* 719 S.W.2d 215, 218 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). However, the legislature subsequently amended article 42.08 of the Tax Code to provide:

(c) A property owner that pays the amount of taxes greater than that required by Subsection (b) *does not forfeit the property owner's right to a final determination of the appeal by making the payment.* If the property owner files a timely appeal under this chapter, taxes paid on the property are considered paid under protest, even if paid before the appeal is filed.

TEX.TAX CODE ANN. § 42.08(c) (Vernon Supp.1991) (emphasis added). This amendment became effective September 1, 1989, without regard to whether the appeal was filed or the taxes paid before this date. Act of June 15, 1989, 71st Leg., R.S., ch. 796, 1989 Tex.Gen.Laws 3591, 3606. This case went to trial January 29, 1990.

In light of the amendment to section 42.08(c) of the Tax Code, we conclude that Seven Investment did not forfeit its claims for tax years 1985 and 1986 by paying in full the taxes for those years. Accordingly, we overrule the appraisal unit's points fifteen through seventeen.

### TRIAL DE NOVO REVIEW

■ In its eighteenth point, the appraisal unit contends that the trial court erred in admitting into evidence testimony and exhibits referring to its initial, but later withdrawn, open-space land designation for tax years 1983 and 1984. The appraisal unit contends that this evidence was inadmissible under section 42.23 of the Tax Code, which provides that review is by trial de novo and that prior actions of the appraisal review board are not admissible unless necessary to establish the trial court's jurisdiction. TEX.TAX CODE ANN. § 42.23(a), (b) (Vernon 1982).

Assuming, without deciding, that the trial court erred in admitting evidence of the initial open-space land designations for tax years 1983 and 1984, we will determine whether the error was harmful. In proving its entitlement to the open-space land designation for tax year 1985, Seven Investment had to prove that the property had a principal agricultural use for the preceding five years. To meet its burden, Seven Investment introduced evidence in

addition to the District's initial granting of the designation for 1983 and 1984. This evidence is outlined above under the discussion of tax year 1985. We conclude that, even without the evidence complained of, Seven Investment presented sufficient evidence to support the trial court's finding that the property had a principal agricultural use in 1983 and 1984. Thus, we hold that error, if any, in the admission of this evidence was harmless. Tex.R.App.P. 81(b)(2). Accordingly, we overrule the appraisal unit's *eighteenth point of error.*

### ATTORNEY'S FEES

■ In its final two points of error, the appraisal unit contends that the trial court erred in awarding attorney's fees to the taxpayers. Regarding the recovery of attorney's fees, the Tax Code provides:

A taxpayer who prevails in an appeal to the court under Section 42.25 [excessive appraisal] or Section 42.26 [unequal appraisal] of this code may be awarded reasonable attorney's fees not to exceed the greater of $5,000 or 20 percent of the total amount of taxes in dispute.

Tex.Tax Code Ann. § 42.29 (Vernon Supp. 1991).[3] Section 42.25 provides:

If the court determines that the appraised value of property according to the appraisal roll exceeds the appraised value required by law, the property owner is entitled to a reduction of the appraised value on the appraisal roll to the appraised value determined by the court.

Tex.Tax Code Ann. § 42.25 (Vernon 1982). Thus, a taxpayer may receive attorney's fees if he obtains a reduction in the appraised value of his property on the appraisal roll. Appraised value is defined as that value determined under chapter 23 of the Tax Code. Tex.Tax Code Ann. § 1.04(8) (Vernon 1982). Chapter 23 provides for various appraised values, including market value and open-space land value. Tex.Tax Code Ann. §§ 23.01 and 23.52 (Vernon 1982 & Supp.1991).

The taxpayers assert that the predecessor statute to section 42.29 supports their recovery of attorney's fees. Former section 42.27 limited recovery of attorney's fees to cases in which a taxpayer obtained a reduction in the *market value* of his property. Act of June 16, 1977, 65th Leg., R.S., ch. 764, 1977 Tex.Gen.Laws 1912, *repealed by* Act of June 19, 1983, 68th Leg., R.S., ch. 905, § 2, 1983 Tex.Gen.Laws 5033. On the same day that the legislature repealed section 42.27, it enacted section 42.29 to permit a taxpayer to recover attorney's fees when he obtains a reduction in the *appraised value* of his property. The taxpayers contend that by using the language "appraised value" in section 42.29 instead of "market value," the legislature intended to enlarge the category of cases filed under the Tax Code in which attorney's fees are recoverable. Considering that the Tax Code defines appraised value more broadly than market value, the taxpayers make a reasonable argument. *See* Tex.Tax Code Ann. § 1.04(7), (8) (Vernon 1982).

The appraisal unit argues that the taxpayers may not recover their attorney's fees because they complain only of the denial of the open-space land designation—not that their property was appraised unequally or excessively.[4] As authority, it relies on *Kerr Cent. Appraisal District v. Stacy,* 775 S.W.2d 739 (Tex.App.—San Antonio 1989, writ denied). *Kerr* holds that a taxpayer may not recover attorney's fees for successfully bringing an action under section 41.41(5) protesting the denial of an open-space land designation because such an action is separate and distinct from an action protesting the determination of the appraised value under section 41.41(1). *Kerr,* 775 S.W.2d at 743; Tex.Tax Code Ann. § 41.41(1), (5) (Vernon Supp.1991).

---

**3.** The parties stipulated that the total amount of taxes in dispute for tax years 1985 through 1988 was $130,300. The trial court's award of $23,-000 in attorney's fees was well within the twenty percent maximum allowed under section 42.29 of the Tax Code. Tex.Tax Code Ann. § 42.29 (Vernon Supp.1991).

**4.** However, the appraisal unit's own manual states that property designated as open-space land "usually receives a lower valuation than market value and therefore the landowner may pay less taxes in the years of eligibility." Dallas Central Appraisal District, Appraisal Review Board Ag-Use Panel Handbook (1988).

The taxpayers, on the other hand, rely on *May v. Appraisal Review Board of Tarrant Appraisal Dist.*, 794 S.W.2d 906 (Tex. App.—Fort Worth 1990, writ denied). The court in *May* reasons that attorney's fees are recoverable in a successful action protesting the denial of an open-space land designation because:

A common-sense interpretation of the facts of these cases show that taxpayers' appeals were brought to challenge the placing of an appraisal value on their property that was excessive under section 42.25 because the appraisals did not take into consideration the open-space use of the properties. When a taxpayer protests the refusal of a taxing authority to take into consideration the open-space use of his property, he is protesting the inaccurate determination of the appraisal or market value of his property under section 41.41(1) and the resulting appraisal is by definition an excessive appraisal which entitles the taxpayers to a reduction under section 42.25 of the Code.

*Id.* at 908. We are persuaded by the court's reasoning in *May*. Because the District denied the open-space land designation to the taxpayers' property, the appraised value it gave the property from which taxes were assessed was the property's market value. The property's appraised market value is higher than its appraised open-space land value. Thus, by protesting the denial of the open-space land designation, the taxpayers simultaneously protested the excessive appraised value of their property. We conclude that the taxpayers prevailed in appealing the excessive appraisal of their property under section 42.25 and are, therefore, entitled to attorney's fees under section 42.29. The appraisal unit's nineteenth and twentieth points are, accordingly, overruled.

### TAXPAYERS' CROSS–POINT

In a single cross-point, the taxpayers contend that the trial court erred in granting a partial summary judgment in favor of the appraisal unit for tax years 1983 and 1984. On August 22, 1986, the District sent Callejo a letter informing him of the intent to revoke the open-space land designation for tax years 1983 and 1984. *See* TEX.TAX CODE ANN. §§ 25.19 and 25.23 (Vernon 1982 & Supp.1991). The District submitted the supplemental records in support of the revocation to the Board prior to September 14, 1986. The taxpayers had ten days from the date the supplemental records were submitted to file a notice of protest of the intended revocation. TEX. TAX CODE ANN. § 25.23 (Vernon 1982).

The taxpayers did not file their protest until November 21, 1986. A taxpayer's untimely protest may be reviewed by the Board if good cause is shown, but only if such protest is filed before the Board approves the supplemental records submitted by the District. TEX.TAX CODE ANN. § 41.-44(b) (Vernon Supp.1991). The Board had approved the supplemental records and the revocation of the open-space land designation for tax years 1983 and 1984 prior to November 21, 1986. For this reason, the Board did not have the authority to hear their protest even if the taxpayers demonstrated good cause for the late filing. We conclude that because the taxpayers failed to exhaust their administrative remedies, the trial court properly granted summary judgment for tax years 1983 and 1984 on the ground that it lacked jurisdiction. *Dallas County Appraisal Dist. v. Lal*, 701 S.W.2d 44, 46 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Accordingly, we overrule taxpayers' cross-point.

The trial court's judgment is affirmed.