Tannie L. PIZZITOLA, Jr. and Mary Jane Pizzitola, Appellants,

v.

GALVESTON COUNTY CENTRAL APPRAISAL DISTRICT and Galveston County Appraisal Review Board, Appellees.

No. 01–90–00258–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 11, 1991.

Rehearing Denied May 2, 1991.

Andrew Mytelka, Paul J. McConnell, Galveston, for appellants.

Benjamin R. Powel, Anthony P. Brown, Otto D. Hewitt, and Evelyn T. Ailts, Galveston, for appellees.

Before O'CONNOR, DUGGAN and MIRABAL, JJ.

## OPINION

O'CONNOR, Justice.

This case presents the question whether a bee is like a cow. The Pizzitolas argue that their land, foraged by bees, is entitled to an agricultural property designation just as if the land were foraged by cows. We hold bees are not like cows. We affirm the judgment of the trial court.

Tannie and Mary Jane Pizzitola appeal from a judgment after a bench trial, denying their claim for an open-space land valuation on their entire 66.17-acre track. The Pizzitolas own a 66.17-acre tract of land in La Marque, Galveston County, which has been leased to beekeeping operators since 1978.

In 1982, the Pizzitolas filed an "open-space land" application to appraise the property in accordance with TEX. CONST. art. VIII, § 1-d-1 and TEX.TAX CODE ANN. § 23.54 (Vernon 1982) (the Code). The Pizzitolas' application was granted, and the entire tract was appraised, based on the open-space land categorization, through the 1986 tax year.

In 1987 and in 1988, Galveston County Central Appraisal District and Galveston County Appraisal Review Board (collectively "the Appraisal District") granted an "open-space land" designation to three acres of the land, which they valued at $270 (the "three acres"), but refused to grant the "open space" designation to the remaining 63.17 acres, which they valued at $459,570 ("the Property"). At the time of trial, the Pizzitolas had an option to sell the land for a dogtrack for approximately $3,000,000. The Pizzitolas appealed both valuations to the district court, and the two suits were consolidated for trial.

## The trial court's findings & conclusions

The trial court made findings of fact and conclusions of law. We reproduce the ones that are contested and relevant to this appeal:

### Findings of fact

8. The Court finds the 63.17 acre portion of the property was not devoted to an agricultural use to the degree of intensity generally accepted in the area for years 1987 and 1988.

9. The Court finds the 63.17 acre portion of the property was not devoted to

an agricultural use to the degree of intensity generally accepted in the area for five of the preceding seven years, prior to 1987.

12. Plaintiffs did not plant Tallow trees or other pollen-bearing vegetation on the 63.17 acre portion of the property, but such vegetation and trees grew naturally *on said property.*

### Conclusions of law

1. Plaintiffs are not entitled to an open-space valuation for the 63.17 acre portion of their property pursuant to the provisions of Sub–Chapter D, Chapter 23 of the Texas Property Tax Code (Tex. Prop.Tax Code Ann. § 23.51 et seq [Vernon 1982 and Supp.1989]).

3. Defendants are entitled to recover all costs incurred herein from the Plaintiffs.

The Pizzitolas challenge these findings with points of error that they are not supported by the evidence and they are contrary to the law.

### Open-space land appraisal

To find the law relating to open-space land appraisal, we look to the Texas Constitution, article VIII, § 1–d–1 and chapter 23, subchapter D of the Code. Section 1–d–1 of article VIII of the Texas Constitution, which became effective on January 1, 1979, reads in part:

> To promote the preservation of open-space land, the legislature shall provide by general law for taxation of open-space land devoted to farm or ranch purposes on the basis of its productive capacity.... The legislature by general law may provide eligibility limitations under this section and may impose sanctions in furtherance of the taxation policy of this section.

Tex. Const. art. VIII, § 1–d–1(a). The 66th Legislature implemented eligibility limitations, effective May 31, 1979, which are now located in subchapter D of chapter 23 of the Code.

Under subchapter D of chapter 23, the chief appraiser determines the validity of the application and the appraised value of the qualified open-space land. Tex.Tax Code Ann. §§ 23.52(a), 23.52(b), 23.57 (Vernon 1982). Central to the decision of the chief appraiser and to our decision are the Code definitions of "qualified open-space land" and "agricultural use."

(1) "Qualified open-space land" means land that is currently devoted principally to agricultural use to the degree of intensity generally accepted in the area and that has been devoted principally to agricultural use ... for five of the preceding seven years....

(2) "Agricultural use" includes but is not limited to the following activities: cultivating the soil, producing crops for human food, animal feed, or planting seed or for the production of fibers; floriculture, viticulture, and horticulture; raising or keeping livestock; raising or keeping exotic animals for the production of human food or of fiber, leather, pelts, or other tangible products having a commercial value; and planting cover crops or leaving land idle for the purpose of participating in any governmental program or normal crop or livestock rotation procedure.

Tex.Tax Code Ann. § 23.51(1), (2) (Vernon Supp.1991).

### The standard of review

In various points of error, the Pizzitolas challenge findings of fact numbers 8, 9, and 12, and certain implied findings of fact.

■ We review the evidence to support the trial court's findings of fact by the same standards we use to review the evidence to support jury findings, that is, by applying the legal and factual sufficiency tests. *IFG Leasing Co. v. Ellis,* 748 S.W.2d 564, 566 (Tex.App.—Houston [1st Dist.] 1988, no writ). If an appellant attacks the legal sufficiency of an adverse finding to an issue on which he had the burden of proof, the appellant must demonstrate that the evidence conclusively established all vital facts in support of the issue. *Holley v. Watts,* 629 S.W.2d 694, 696 (Tex. 1982); *Ritchey v. Crawford,* 734 S.W.2d 85, 86 (Tex.App.—Houston [1st Dist.] 1987, no writ). In reviewing these "as a matter of law" points of error, we must first examine

the record for evidence that supports the finding and ignore all evidence to the contrary. *Holley*, 629 S.W.2d at 696. If no evidence supports the findings, only then do we look to see if the contrary proposition is established as a matter of law. *Id.*

■ If an appellant challenges the "factual sufficiency" of the evidence to support an adverse finding, we must consider and weigh all the evidence, both that in support of and contrary to the challenged finding. In reviewing these "great weight" points of error, we must uphold the finding unless we decide the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *M.J. Sheridan & Son Co. v. Seminole Pipeline Co.*, 731 S.W.2d 620, 623 (Tex.App.—Houston [1st Dist.] 1987, no writ). Because the Pizzitolas raise five points of error combining legal and factual sufficiency points, we first review the legal sufficiency points, and then the factual sufficiency points.

■ To establish that property was incorrectly denied an appraisal as open-space land, the Pizzitolas must prove the Property is (1) currently devoted principally to agricultural use, (2) to the degree of intensity generally accepted in the area, and (3) has been devoted principally to agricultural use for five of the preceding seven years. Tex.Tax Code Ann. § 23.51(1); *see Riess v. Williamson County Appraisal Dist.*, 735 S.W.2d 633, 638 (Tex.App.—Austin 1987, writ denied) (property used to raise sheep and chickens, harvest vegetables and fruit, qualified for open-space valuation); *Bower v. Edwards County Appraisal Dist.*, 697 S.W.2d 528, 529 (Tex.App.—San Antonio 1985, no writ) (land used principally for deer grazing did not qualify as open-space land).

It is undisputed that the Pizzitolas' property was used for beekeeping operations for five of the seven years preceding 1987 and 1988. Additionally, the Pizzitolas produced evidence regarding "degree of intensity" through their expert, who testified that the degree of intensity of property use was typical of other beekeeping operations

in the area. Those two factors, however, are only relevant if the property's use for bee forage constitutes an agricultural use as contemplated by the statute. That is the issue we must focus on here: Is there sufficient evidence to support the trial court's finding that the Property was not devoted to an agricultural use?

**The legal sufficiency points of error**

■ We collect here the evidence that supports the trial court's findings of fact numbers 8, 9, and 12, as well as the implied findings that the Property was not devoted principally to agricultural use for five of the preceding seven years or continuously for five years prior to 1987.

Before we review the evidence, we look to the Code to determine what evidence is relevant to a finding of agricultural use. Under section 23.51(2), "agricultural use" includes cultivating the soil, producing crops for human or animal food or seed or fiber production, production of flowers, grapes, or garden plants, raising livestock, raising exotic animals for human food production or tangible products having commercial value, and planting cover crops or leaving land idle for the purpose of participating in any government program or normal crop or livestock rotation. While the list is not exhaustive and it cannot be construed as excluding beekeeping operations, all items on the list appear to require some human action, i.e., working the soil, growing crops, maintaining fencing incident to raising livestock. *See, e.g., Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174 n. 2 (Tex.1980) (words grouped in a list should be given related meaning; use of words denoting activity exclude an attempt to acquire money or use money). In particular, we note that idle land will be recognized as having an agricultural use only if it is part of a government program or normal crop or livestock rotation.

Under § 23.52(d) of the Code, the State Property Tax Board is required to develop, by rule, and distribute appraisal manuals describing the method of appraising open-space land. The state board developed and distributed such a manual, and the Apprais-

al District introduced it as evidence.[1] The Manual, promulgated by rule, has the force and effect of law. *See General Elec. Credit Corp. v. Smail*, 584 S.W.2d 690, 694 (Tex.1979).

The Manual provides that a special agricultural appraisal is permitted only if the land and its owner meet specific requirements defining farm and ranch use. It cautions that land will not qualify simply because it is rural or has some connection with agriculture or is open land that has no other possible use. MANUAL at 5. While the Manual states that the examples and figures in the Manual are illustrative and not mandatory, the Appraisal District relies on the following example in the Manual:

Q. A property owner maintains a number of bee hives on a small corner of his large tract. The bees fly over the entire tract to collect pollen. The honey is sold as a commercial venture. The rest of the tract is lying idle. Does the entire tract qualify?

A. No. Only the immediate area where the hives are located and honey produced qualifies as land used for an agricultural purpose.

The area immediately surrounding the hives where the honey production takes place is devoted principally to agricultural use. It is unlikely that any of the larger tract, over which the bees fly, is being used to the degree of intensity typical in the area. However, if the owner had planted the entire tract with a special crop suited to produce a type of pollen or nectar that produces desirable honey and there were a sufficient number of hives to harvest the nectar, the remainder of the tract would qualify.

MANUAL at 46. Even where examples in the Manual are illustrative and not mandatory, they are entitled to great deference. *See General Elec. Credit Corp.*, 584 S.W.2d at 695.

■ The designation of the three acres as open-space land, which the Pizzitolas do not challenge, is relevant to the valuation of the Property. Mary Elen Reinarz of the Galveston Central Appraisal District testified that the Pizzitolas' property was reviewed in 1987, and that two on-site inspections were made. Reinarz described how the Appraisal District carved out the three acres to which it granted the open-land valuation:

Well, there was no real precedent for this. We reviewed the application. We field reviewed the property and checked the location of the hives. We measured the area around the hives and passageway to the hives. We contacted the State Property Tax Board to discuss the matter with them. They were unable to give us any assistance. We made what we thought was a common sense decision in granting the special use valuation on the three acres that were actually being used for the bee hives, plus some service areas and a little extra for some passageways to get to the hives from the road.

Mr. Pizzitola testified that he "currently" had an option to sell the entire tract (the Property plus the three acres) for approximately $3,000,000 for a dog racetrack. He testified that he had not spent any money on the property to make it amenable to honey production; his only indirect expenses attributable to the beekeeping operations consisted of turning down a soybean lease and foregoing dove hunting on the property. He testified the lessees had incurred expenses in putting up a gate, clearing the area, and mowing the area immediately surrounding the hives, the area granted the open-space valuation. Mr. Pizzitola identified the lease agreements with the successive beekeeping operators, and they were introduced into evidence. The Pizzitolas had the right to terminate the leases with 60 days notice.

The Pizzitolas presented other witnesses. William Howard Bending, one of the lessees, testified the annual rent was $1.00 and five gallons of honey. Dr. John Thom-

---

1. STATE PROPERTY TAX BOARD, MANUAL FOR THE APPRAISAL OF AGRICULTURAL LAND (June 1988) ("the Manual"). The Appraisal District did not rely on the Manual in making its determination because the Manual was issued after the Pizzitolas' land was appraised. The trial court did rely on the Manual.

as, an entomologist with the Texas Agricultural Extension Service and expert witness for the Pizzitolas, testified that the bees required the forage, not just on the Pizzitolas' land, but on some 930 acres. He called the apiary operations a "sideline operation" because they provided supplemental income. According to Dr. Thomas, the Pizzitolas' property showed no sign of commercial development, livestock operations, or any other kind of agricultural operations, except use as bee forage. Dr. Thomas also testified that he was unfamiliar with the constitutional and statutory provisions regarding agricultural exemptions for land, and that he had no opinion concerning their applicability to the property.

The evidence showed that neither the Pizzitolas nor their lessees took any action to develop, cultivate, improve, or otherwise maintain the Property for beekeeping operations. Nor was the Property idle as part of a government program or normal crop or livestock rotation.

Recently, the Fourth Court of Appeals found that property leased for the sole purpose of grazing horses, used only for recreational purposes, qualified as "open-space land." *Kerr Central Appraisal Dist. v. Stacy*, 775 S.W.2d 739, 742–43 (Tex. App.—San Antonio 1989, writ denied). In appealing the trial court's decision, the Kerr Central Appraisal District urged that the open-space valuation was not available because no "product" was produced. The San Antonio Court of Appeals rejected the "product theory." Here, the Pizzitolas seem to urge the converse side of product theory: Because honey is produced, the land—more than required to tend the bees, but less than required for their forage—qualified for the open-space valuation. We reject their argument.

We hold that the evidence supports the finding that the Property was not devoted to an agricultural use under § 23.51(1) and (2) of the Code. The agricultural use of the three-acre tract did not extend to benefit the surrounding 63.17 acres. The 63.17 acres of the Property were used only by bees to gather pollen and nectar from native plants and trees, and the Pizzitolas took no action to improve it, cultivate it, or maintain it for beekeeping operations. *Compare to Riess*, 735 S.W.2d at 635–37.

We overrule the Pizzitolas' points of error one through five as they present "as a matter of law" points of error, and find the evidence legally sufficient to support the trial court's findings of fact numbers 8, 9, and 12, and the implied findings.

**The factual sufficiency points of error**

■ To review the Pizzitolas' great weight points, we consider, in addition to the evidence considered under the legal sufficiency points of error; the evidence that could support contrary findings to those made by the court. After Dr. Thomas spent two hours looking at the beekeeping operation on the Pizzitolas' land, he characterized it as an active, full time, permanent, commercial, agricultural operation. He said for the Property to remain a profitable enterprise, it could not support any more colonies. He stated that the degree of intensity of property use was typical of other beekeeping operations in the area. He regarded the beekeeping operations as taking place both on the land where the hives were located and on the surrounding acreage.

Bending, one of the lessees, testified that he held other employment while beekeeping, and beekeeping was not his primary source of income. Bending kept hives in two locations on the property. He stated that the property might have had a maximum of 140 hives and a minimum of 45.

William L. Peace, another lessee, testified that beekeeping was a labor-intensive, agricultural enterprise during the harvesting time in June, July, and August. He said that during the year, hives had to be checked at least once a month to ensure the bees were healthy. According to Peace, like other livestock, bees had to be treated for diseases with antibiotics. He testified that, in addition to harvesting, beekeeping required preparing, maintaining, and building equipment, and ensuring access to the hives, including mowing around the hives.

The evidence shows that beekeeping is an agricultural use. Bees, like cows, re-

quire care and attention. The hives and honey extraction equipment need maintenance. The beekeeping operations produced honey, a food for human consumption, which the lessees sold for profit. The tending of the bees—the preparation, maintenance of the hives and equipment, and the honey extraction—took place on the three acres, not on the Property. Neither the Pizzitolas nor their lessees developed, cultivated, improved, or took any action to maintain the Property for beekeeping operations.

Considering this testimony, we do not find that the findings of fact filed by the trial court are wrong or manifestly unjust.

We overrule the Pizzitolas' points of error one through five as they present "great weight" points of error; we find the evidence factually sufficient to support the trial court's findings of fact numbers 8, 9, and 12, and the implied findings. We also overrule point of error seven because we find the trial court did not err in concluding the Pizzitolas were not entitled to an open-space valuation on the Property.

### The tallow tree finding

In point of error six, the Pizzitolas complain that the trial court erred in requiring them to show that they had planted pollen-bearing plants to allow them an open-space valuation. The trial court made no such ruling. The trial court made a finding that the Pizzitolas did not plant any tallow trees or pollen-bearing vegetation. The trial court did not hold that the Texas Constitution or the Code required such a finding. We overrule the Pizzitolas' point of error six.

### Recovery of costs by the Appraisal District

In point of error eight, the Pizzitolas challenge conclusion of law number three, that the Appraisal District was entitled to recover costs if this Court reverses the trial court's judgment and renders judgment in favor of them. Tex.R.Civ.P. 131.

Because we affirm the judgment of the trial court, we overrule point of error eight.