**HARRIS COUNTY APPRAISAL DISTRICT, Appellant**

v.

**James H. WILKERSON, Trustee, Appellee.**

No. 01–94–01091–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 10, 1995.

Dissenting Opinion Nov. 9, 1995.

Rehearing Overruled Nov. 9, 1995.

Robert P. McConnell and Mario L. Dell'Osso, Houston, for appellant.

Don Weitinger, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and O'CONNOR and TAFT, JJ.

## OPINION

O'CONNOR, Justice.

This case presents the question whether the land on which a golf course sits is a forest for purposes of a timber tax evaluation under the Tax Code. We hold it is not.

At trial, James H. Wilkerson argued he was entitled to carve out fairways, greens, and a pro-shop from the forest and evaluate the rest of the forest as timberland. The Harris County Appraisal District disagreed, arguing the golf course and the land on which it sits are commingled and part of the

land cannot be evaluated as timberland. The trial court ruled for Wilkerson. On appeal, the District, as the appellant, complains that the evidence is not sufficient to support the trial court's findings of fact. We reverse and render for the District.

## Facts

Wilkerson owns a 775–acre tract of land near Humble, Texas. The land has been carried on the District's tax rolls as timber-use valuation since before 1983. On January 2, 1992, Wilkerson leased about 132 acres of non-contiguous property out of the 775–acre tract to Tour 18, I, Ltd., a Texas Limited Partnership.[1] Tour 18 built a golf course on the leased premises that opened in 1992. On a map, the land in between the leased 132 acres resembles a gerrymandered political district. The golf course's fairways, greens, and pro-shop are surrounded by land not included in the lease. It is the land in between the fairways, greens, and pro-shop that Wilkerson claims a timberland tax valuation.

On April 23, 1992, Wilkerson gave the District notice that a change of use had occurred on the 132 acres leased to Tour 18. Wilkerson asked the District to continue the timberland valuation on the property in and around the greens, fairways, and pro-shop, and only revalue the land actually leased to Tour 18. The District reviewed the notice and decided that the golf course used and occupied a 381–acre tract, not just the isolated islands of greens, fairways, and pro-shop. The District determined that, for 1992 and 1993, a change of use had occurred on an entire 381–acre tract.

Wilkerson appealed the District's decision to the district court. After a non-jury trial, the court rendered judgment that the change in use from timberland for 1992 and 1993 applied only to the leased 132 acres; therefore, the remaining 248.95 acres carved out by the District were entitled to the timber-use valuation for tax purposes. The trial court filed findings of fact and conclusions of law.

1. Tour 18 leased exactly 132.0470 acres from Wilkerson.

## Sufficiency of the evidence

In points of error two through five, eight, and nine, the District contends the evidence is legally and factually insufficient to support the trial court's findings of fact that the change in use from timberland to non-timberland occurred in 1992 only on 132 acres of the 381–acre tract; therefore, the evidence was legally and factually insufficient to support the judgment. In other words, the District contends the evidence is legally and factually insufficient to support a finding that the remaining 248.95 acres qualified as timberland under Tex.Tax Code § 23.72 (Vernon 1992). In points of error six and seven, the District contends the trial court erred in its conclusions of law.

## Standard of review

■■ Findings of fact in a case tried to the court have the same weight as a jury's answers to questions in the charge. *Pizzitola v. Galveston County Cent. Appraisal Dist.*, 808 S.W.2d 244, 246 (Tex.App.—Houston [1st Dist.] 1991, no writ). Findings of fact are not conclusive when a complete statement of facts appears in the record. *Pontiac v. Elliott*, 775 S.W.2d 395, 399 (Tex. App.—Houston [1st Dist.] 1989, writ denied). Findings of fact are binding on this Court only if supported by evidence of probative force. *Id.* The trial court's findings of fact are reviewable by the same standards that are applied in reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a jury question. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994); *Stern v. Wonzer*, 846 S.W.2d 939, 942 (Tex. App.—Houston [1st Dist.] 1993, no writ).

■■ In reviewing the legal sufficiency of the evidence, we consider only the evidence and inferences that, when viewed in their most favorable light, tend to support the finding, and ignore all evidence and inferences to the contrary. *Catalina*, 881 S.W.2d at 297 ("no evidence" point); *Stern*, 846 S.W.2d at 942. If there is any evidence of probative force, we must overrule the point and uphold the finding. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *Stern*, 846 S.W.2d at 942. In reviewing the factual sufficiency of the evidence, we examine all of the evidence, both the evidence that supports the finding and the evidence that controverts the finding. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Pizzitola*, 808 S.W.2d at 247. We will set aside the finding only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Cain*, 709 S.W.2d at 176; *Airflow Houston, Inc. v. Theriot*, 849 S.W.2d 928, 931 (Tex.App.—Houston [1st Dist.] 1993, no writ).

Although a party may not challenge the trial court's conclusions of law for factual insufficiency, a party may challenge them as incorrect, based on the facts. *Airflow Houston*, 849 S.W.2d at 931. We review conclusions of law de novo as a question of law, and we uphold them if the judgment can be sustained on any legal theory supported by the evidence. *Nelkin v. Panzer*, 833 S.W.2d 267, 268 (Tex.App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.).

## The trial court's findings

In its findings of fact, the trial court found (1) a change of use occurred in 1992 on 132 acres; (2) the District erred in assessing rollback taxes against Wilkerson on 381 acres instead of on 132 acres; and (3) the property that is used for a golf cart path and for lakes and ponds that is not included within the 132 acres does not interfere or change the timber-use designation of the remaining 248.95 acres. In its conclusions of law, the trial court concluded the change in use of timberland applies only to 132 acres, and the tax rolls for 1992 and 1993 will show the acreage that changed use as 132 acres.

## The applicable law

The Tax Code provides the method for appraising qualified timberland, and provides the taxes to be assessed on property when a change in use of timberland has occurred. Tex.Tax Code §§ 23.73, 23.76(a), (d) (Vernon 1992). Section 23.73(a) provides:

The appraised value of qualified timber land is determined on the basis of the category of the land, using accepted income capitalization methods applied to average net to land. The appraised value so

determined may not exceed the market value of the land as determined by other appraisal methods.

The code also provides the qualifications necessary for land to receive a timberland appraisal. Section 23.72 provides:

> Land qualifies for appraisal as provided by this subchapter if it is currently and actively devoted principally to production of timber or forest products to the degree of intensity generally accepted in the area with intent to produce income and has been devoted principally to production of timber or forest products or to agricultural use that would qualify the land for appraisal under Subchapter C or D of this chapter for five of the proceeding seven years.

TEX.TAX CODE § 23.72.[2]

Neither party cites any authority interpreting the code provisions governing the qualification of land as timberland, and we have found none.[3] The District cites cases that determined whether property qualified for open-space land valuation under TEX.TAX CODE § 23.51 (Vernon 1992). *Pizzitola*, 808 S.W.2d at 249–50; *Kerr Cent. Appraisal Dist. v. Stacy*, 775 S.W.2d 739, 742 (Tex. App.—San Antonio 1989, writ denied); *Riess v. Williamson County Appraisal Dist.*, 735 S.W.2d 633, 638 (Tex.App.—Austin 1987, writ denied). Even though these cases involved different provisions of the Tax Code, we find these cases instructive because they demonstrate that a party must prove the statutory requirements that entitle it to a certain appraisal or valuation on property.

■ To be entitled to a timberland appraisal on the 248.95 acres in dispute, Wilkerson had to prove the property (1) is currently and actively devoted principally to production of timber or forest products (2) to the degree of intensity generally accepted in the area (3) with the intent to produce income and (4) has been devoted principally to timber production or forest products for five

of the preceding seven years. TEX.TAX CODE § 23.72; *cf. Pizzitola*, 808 S.W.2d at 247.

### The evidence

Five witnesses testified for Wilkerson. Wilkerson testified that the 381 acres that were re-evaluated by the District are part of a larger 775–acre tract he owns. Under the lease agreement, Tour 18 pays the taxes and rollback taxes on the 132 acres leased as a golf course; Wilkerson pays the taxes on the remaining 248.95 acres. He has a timber management agreement with a professional forester, Clifford Isaacs, that covers the 3000 acres he has in timber, which includes the disputed 248.95 acres. The timber management agreement was entered into in June 1993, but Wilkerson testified he had an agreement with Isaacs for several years before 1993.[4] Wilkerson testified he bought the 381 acres in 1983 and cut timber on it that same year. 1983 was the last year in which timber was cut from the property. He plans to continue to manage the disputed 248.95 acres as timberland and harvest timber from it in about five years.

Wilkerson testified there are several lakes surrounding the golf course. The lakes were modified and dyed blue for the course and are maintained by Tour 18. About 20 acres of property used for these lakes are not included in the 132 acres leased as the golf course. He also testified some of the golf cart paths that connect the 18 holes and the pro-shop are not on the leased premises but are on the disputed 248.95 acres. The trial court's findings of fact stated that about three to four acres of golf cart paths are not included in the 132 acres leased as a golf course.

James Bailey, Wilkerson's tax consultant, testified he videotaped portions of the disputed 248.95 acres. The videotape was shown while he was on the witness stand. The videotape mainly shows wooded areas that are off the fairways of the golf course. He

---

2. Subchapters C and D provide the method for designating and appraising agricultural land. *See* TEX.TAX CODE §§ 23.41, 23.42, 23.51, 23.52 (Vernon 1992).

3. Only one case has discussed the appraisal method used to value timber land. *Temple Eas-*

*tex v. Spurger ISD*, 720 S.W.2d 607 (Tex.App.—Beaumont 1986, no writ). This case did not, however, discuss the statutory provisions or issue involved in this case.

4. That agreement is not in evidence.

testified that a lot of the interior areas of the golf course are not included in the leased premises.

Layne Ricks, a golf professional at Tinwood Golf Club in Hockley, Texas, testified that harvesting timber on some of the 248.95 acres would not affect the "playability" or aesthetics of the golf course. He admitted, however, that trees add to the ambience of the course and all golf courses in the area are wooded.

David Edsall designed the Tour 18 golf course. He testified he was first contacted to design the course in the spring of 1991. Construction began in September 1991, and the course opened November 1992. He testified the lakes on the 381–acre tract cover 24.8 acres, 20 acres of which lie outside the leased premises. Thus, most of the dyed-blue lakes are on property Wilkerson claims is forest land. The lakes were constructed from an area of wetland. The remaining wetland is not populated with trees but is not part of the leased premises. Some of the golf cart paths are outside the leased premises.

Wilkerson's forestry consultant, Clifford Isaacs, testified Wilkerson has been his client indirectly since the mid 1980's and more directly since about 1988. Issacs manages about 3000 acres of timberland for Wilkerson including the disputed 248.95 acres. In his opinion, he would not harvest timber from the 248.95 acres because it is at its prime growing rate; he would allow the acres to grow for at least five more years. He testified that the lakes along the golf course are part of the forestland. He believes that he can log the disputed acres without running equipment on the Tour 18 golf course fairways and greens. He does not recommend clear cutting the acres when the timber is harvested. He testified that less than 10 percent of the trees on the disputed acres would be removed during any individual thinning or cutting.

Isaacs is in charge of the logging operation that was currently going on at the Newport golf course. He testified that at Newport, they cut timber between the fairways but did

not harvest within about 100 yards of the clubhouse. The timber was cut according to a timber plan and the owner's directions. In January 1994, he conducted a timber harvest inventory on 443 acres of Wilkerson's property, in which the 248.95 acres were included.[5] He had not conducted any inventory on the property before 1994; the 1994 inventory was the first one conducted since the last harvest in 1983. He concluded that, on 443 acres around the golf course, 12,000 trees were merchantable and of those, 3000 could be harvested. He would recommend about 2,175 trees be harvested from the 248 acres, which is about 325,000 board feet of soft timber. Since 1983, the disputed 248.95 acres have not been thinned or planted, but the area is replanting itself. The forestry management that has been done since 1983 on the property includes an annual inspection for southern pine beetles and for timber trespassing.

The District called two witnesses to testify. Donald Landry, director of litigation support for the Harris County Appraisal District, is a certified appraiser and registered professional appraiser. In his opinion, the entire 381 acres is a golf course. After reviewing the logical physical barriers around the 381 acres, such as streets and right-of-ways, and after touring the property, he determined the 381 acres are primarily used as a golf course. Even presuming some timber will be cut, the highest and best use of the property, in appraisal terms, is as a golf course; that is, the acres used as a golf course would bring the most income to the property. In considering the highest and best use for the property, he also considers how a willing buyer and seller would transfer the property. In his opinion, no willing buyer would buy just the 132 acres; a willing buyer would buy the 381 acres as a golf course. In his opinion, the 132 acres actually leased as a golf course is only part of the golf course. His appraisal of the property was not constrained by what acres are covered under the lease. For timber purposes, all 381 acres had the primary use changed from timberland. In his opinion, the areas between the fairways, even if they have timber on them, are commingled

5. Wilkerson commissioned the inventory after    the dispute arose here.

with the golf course and provide the space between the golf course holes. The general circumstances of the property changed in use.

Gary Kronrad, an expert witness who testified for the District, has rewritten the timber-use valuation appraisal manual, which has not yet been adopted, for the Property Tax Division of the Comptroller's Office. The current manual was written in 1983. He presented aerial photographs of 381 acres and photographs of clear-cut harvesting and select harvesting of timber. Using Isaac's recommendation that 325,000 board feet be harvested from the disputed 248.95 acres, Kronrad calculated that 325,000 board feet would equal a harvest of 6.8 trees per acre. In his opinion, that does not meet the intensity of use for forestry management in Harris County. After reviewing the timber management agreement between Isaacs and Wilkerson, he found that there was no management plan in the agreement, meaning there was no discussion about what would be done to the land. Harvesting trees on property does not mean that the property meets the degree of intensity of use accepted in Harris County or that the property meets the primary use test. In his opinion, the 248.95 acres that are commingled with the golf course is not commercially viable timberland. Timber buyers were not going to seriously bid on a harvest of these acres.

Kronrad's inspection of the disputed property showed there were trees of merchantable size, some of which could be harvested. However, there were many other trees of poor quality and species that were noncommercial; those trees are the result of poor forest management and should be removed and replaced with commercially viable species. He saw no signs of recent management, such as thinning, planting, or removal of noncommercial species.

In Kronrad's opinion, the property is not actively and currently managed to the degree of intensity that properties are in East Texas or Harris County. The property is not devoted principally to production of timber or forest products; in his opinion, the property is primarily a golf course. The property does not meet the degree of intensity in Harris County to qualify for timber-use valuation. In his opinion, the property would not produce a net income from timber. The property is not managed for timber-use valuation. The degree of intensity that a property should be managed to qualify as timberland is a matter of judgment among experts. In his opinion, the disputed property is not commercially viable to harvest because of the low number of trees and the costs associated with damaging the golf course during the harvest; therefore, it would not produce a net income.

On rebuttal, Isaacs testified the 248.95 acres is barely commercially feasible. He asserted that he could sell its timber today, and while it would not bring top dollar, it would make a profit. He agrees the disputed property is not intensely managed because of the costs involved. He would recommend that 8.7 trees per acre be harvested. He agrees some timber buyers would be scared off because of damage to the golf course caused during harvesting. He recommended thinning the property but Wilkerson decided not to for economic reasons.

### The analysis

We must first determine whether there is legally sufficient evidence to support the finding that the District incorrectly denied Wilkerson a continuation of his timberland valuation on the disputed 248.95 acres. If there is any evidence of probative force to support this finding, we must uphold it. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988); *Stern,* 846 S.W.2d at 942.

Wilkerson employs a professional forester, Isaacs, to manage his timber properties, including the disputed acres, and these acres are under a management plan. The 248.95 acres are inspected annually for insect infestation and for trespassing; however, the property has not been thinned. In 1994, Wilkerson commissioned an inventory from his forester. However, the disputed tax years are 1992 and 1993. The evidence shows that, other than the annual inspections, no harvesting inventory or recommendation was sought by Wilkerson in 1992 or 1993 or in the preceding five years. There is

no evidence that an annual inspection is enough timber management to meet the requirements of the statute. That is, there is no evidence that an annual inspection meets the degree of intensity generally accepted in Harris County to show the property is actively devoted principally to timber production. Isaacs did not offer any testimony regarding the degree of intensity generally accepted in the area to qualify property for timber-use valuation.

■ The only evidence is to the contrary. The District's expert witness saw no signs of recent management on the disputed acres, such as planting, thinning, or removal of noncommercial species. He testified that many trees were of poor, noncommercial quality and were allowed to remain because of poor forest management. He concluded the disputed acres did not meet the degree of intensity in Harris County to qualify for timber-use valuation.

There is evidence that Wilkerson intends to harvest some merchantable trees on the 248.95 acres in five years and that the trees can be harvested at a profit despite the surrounding golf course fairways and greens because timber was harvested from areas surrounding the Newport golf course. However, evidence that trees can be and will be cut and sold, even for a profit, does not satisfy all the statutory qualifications for the timber-use valuation under TEX.TAX CODE § 23.72. To qualify for a timber-use appraisal, the code requires more than an intent to harvest trees in the future and more than owning land with merchantable trees.

We hold there is no evidence that in 1992 and 1993 the 248.95 acres was devoted principally to timber production to the degree of intensity generally accepted in Harris County. TEX.TAX CODE § 23.72.

■ Wilkerson also argues that the degree of intensity a landowner must use to qualify for the timberland valuation is modified by the language in the statute "with intent to produce income." TEX.TAX CODE § 23.72. In other words, the degree of intensity that is accepted is the degree that still allows a profit to be earned from the timber production. We disagree with Wilkerson's interpretation of the statute. If property cannot be managed to the degree of intensity generally accepted in the area, then it does not qualify for a timberland valuation under the statute.

■ Under Wilkerson's construction, the acceptable degree of intensity would be contingent on profitability. That is, a landowner, who is claiming a timber-use valuation, could decide not to manage its property at all because to do so would cost more than the income to be realized from any timber. The acceptable degree of intensity for timberland management does not vary from landowner to landowner and does not depend on whether the landowner can realize a profit; otherwise, the language in the statute regarding "the degree of intensity generally accepted in the area" would be rendered meaningless.

We sustain the legal sufficiency challenges in points of error two, three, four, five, and eight. Because we sustain these points of error, we need not address the District's remaining points.

### Conclusion

We reverse the trial court's judgment and render judgment that the entire 381–acre tract, and not simply 132 acres of the tract, changed its use and therefore, is not qualified for the timberland valuation under TEX.TAX CODE § 23.72.

### DISSENTING OPINION ON DENIAL OF MOTION
### FOR EN BANC CONSIDERATION

OLIVER–PARROTT, Chief Justice, dissenting.

In the order denying appellee's motion for rehearing, I dissented from the decision to deny rehearing because I agreed with appellee that this case should be remanded for a new trial in the interest of justice. I now respectfully dissent for the same reason from this Court's decision not to reconsider this case en banc.

In his motion for rehearing and rehearing en banc, appellee urged this Court to remand this case for a new trial in the interest of justice, rather than render judgment, be-

cause the case is one of first impression. Appellee argued that he had no precedent to guide him in interpreting the timber-use valuation statute, TEX.TAX CODE ANN. § 23.72 (Vernon 1992). Specifically, appellee argued that, before this Court's opinion, there was no precedent interpreting the language in section 23.72 regarding "the degree of intensity generally accepted in the area with intent to produce income." Appellant does not dispute these arguments, and I agree with appellee's assertions.

Both the courts of appeals and the Supreme Court have discretion in a proper case to remand in the interest of justice. *Morrow v. Shotwell,* 477 S.W.2d 538, 542 (Tex.1972); TEX.R.APP.P. 180; *see* TEX.R.APP.P. 81(c); *see also Pontiac v. Elliott,* 775 S.W.2d 395, 401 (Tex.App.—Houston [1st Dist.] 1989, writ denied) (remanding, in the interest of justice, mental anguish and other damage issues after finding evidence legally insufficient). Rule 180 of the Rules of Appellate Procedure specifically allows the Supreme Court to do so; the predecessor to TEX.R.APP.P. 81(c)[1] has been cited as authority for the courts of appeals likewise to remand a case in the interest of justice. *Scott v. Liebman,* 404 S.W.2d 288, 294 (Tex.1966).

I would grant appellee's request for this Court to reconsider this case en banc and sustain his point of error on rehearing requesting us to remand the case to the trial court for a new trial.

Justice HUTSON–DUNN joins this dissenting opinion.

---

1. Former TEX.R.CIV.P. 434 was repealed by Supreme Court order dated April 10, 1986.