CDB SOFTWARE, INC., Appellant,

v.

Charles Lindsey KROLL, Appellee.

No. 01–97–01278–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 4, 1998.

---

William Karl Kroger, Houston, for appellant.

Ramon G. Viada, Houston, for appellee.

Before Justices MIRABAL, O'CONNOR, and NUCHIA.

## OPINION

O'CONNOR, Justice.

CDB Software, Inc., the plaintiff below, appeals a jury verdict in favor of Charles Kroll, the defendant below. Kroll appeals the jury's nominal award of damages. We modify the judgment below and, as modified, affirm.

### Factual Background and Procedural History

CDB, founded by Richard Barry in 1985, is a small Houston company that develops and licenses software products for mainframe computer systems. Before 1990, Barry owned 60 percent of CDB's stock and Jeanne Eaton owned 40 percent.

In 1988, Barry hired Kroll. In October 1989, CDB began negotiations with Candle Corporation for CDB to convey ownership of an undivided interest in CDB's computer software products to Candle. Under the deal, Candle would pay CDB a 15 percent royalty on fees Candle received from licensing the products over a ten-year period.

In November 1989, Barry resigned as CDB's president and director, but he continued to be majority shareholder and to earn income indirectly from CDB through an outside consulting firm called jtrak services, inc.[1] Barry's departure left Kroll as CDB's sole director, president, chief executive officer, and chief financial officer; however, Kroll was not a shareholder. In February 1990, CDB's shareholders (Barry and Eaton) appointed Fred Earhart, another CDB employee, to CDB's board of directors.

In 1990, Kroll decided he wanted to renegotiate his compensation package. In February 1990, Kroll sent a letter to Earhart proposing that CDB and Kroll enter into a new employment contract and compensation arrangement. Kroll asked Earhart to work with CDB's outside counsel, Gene Rooke, to create a compensation package for Kroll. Rooke drafted three documents: (1) the "Employment Agreement," which provided a yearly salary of $150,000 for two years; (2) the "Additional Compensation Agreement," which gave Kroll a share in CDB's revenues; and (3) the "Deferred Compensation Agreement," which required CDB to deposit $150,000 into a trust account, with additional $50,000 deposits on December 31st of 1990 and 1991 (collectively, the compensation agreements). The compensation agreements required CDB to pay Kroll these amounts even upon Kroll's death, disability, or termination. On March 20, 1990, after discussing the compensation agreements with Barry, Kroll and Earhart signed the agreements.

Although Kroll, as CDB's president, had the authority to pay himself according to the terms of the compensation agreements, from 1990 until 1994, he did not.

By the summer of 1990, Barry owned 100 percent of CDB's stock. In March 1994, Barry fired Kroll. In April 1994, Kroll sent a letter to Barry demanding payment under the compensation agreements. Barry refused. In May 1994, Kroll notified CDB of its breach of the compensation agreements and demanded that the parties submit the dispute to arbitration. Instead, CDB filed a declaratory judgment action, asking the court to determine that the compensation agreements were invalid and unenforceable. Kroll filed a plea in abatement, answer, and counterclaim seeking damages under the compensation agreements.

The case was tried to a jury in April 1997 and the jury found as follows:

1. Earhart and Kroll did not agree that submitting the agreements to the

---

1. The record indicates the company's name is spelled entirely in lower case.

shareholders before April 15, 1990 was required before the compensation agreements became effective.

2. CDB's failure to comply with the compensation agreements was not excused by Kroll's waiver, fraud, or Kroll's failure to comply with a material obligation of the compensation agreements.

3. Kroll did not breach his fiduciary duty to CDB in connection with the compensation agreements.

4. CDB's shareholders did not ratify the compensation agreements.

The jury awarded Kroll $516,000 for breach of the Employment Agreement, $876,613 for breach of the Additional Compensation Agreement, and $1.00 for breach of the Deferred Compensation Agreement.

Kroll filed a motion to disregard the jury's nominal award for breach of the Deferred Compensation Agreement, which motion the trial court denied. The trial court also reduced the jury award for breach of the Employment Agreement from $516,000 to $300,000 and offset Kroll's total award by the stipulated amount that CDB paid Kroll while the compensation agreements were in effect. The total of Kroll's award amounted to $539,271, plus interest, and $200,000 in attorney's fees.

On appeal, CDB raises nine issues: (1) the evidence is legally and factually sufficient to support the jury's findings; (2) the trial court erred in overruling CDB's motion for directed verdict and refusing to submit CDB's proposed issues on equitable estoppel, novation, accord and satisfaction, laches, and mitigation of damages; (3) limitations barred Kroll's claim for damages; and (4) the trial court erred in refusing to suggest a remittitur of $222,777 under the Additional Compensation Agreement. Kroll brings one cross-issue, which challenges the jury's award of $1.00 for damages under the Deferred Compensation Agreement.

### A. Limitations

In issue eight, CDB asserts the trial court erred in overruling its motion for judgment notwithstanding the verdict (JNOV) on the ground that part of the damages awarded to Kroll was barred by the statute of limitations.

### 1. Standard of review

█ A JNOV is proper when a directed verdict would have been proper. Tex.R. Civ. P. 301; *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex.1991). A motion for JNOV should be granted when (1) the evidence is conclusive, and one party is entitled to recover as a matter of law, or (2) a legal principle precludes recovery. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex.1990); *John Masek Corp. v. Davis*, 848 S.W.2d 170, 173 (Tex.App.—Houston [1st Dist.] 1992, writ denied). We review the denial of CDB's motion under the legal sufficiency standard. *See Brown v. Bank of Galveston*, 963 S.W.2d 511, 513 (Tex.1998) (JNOV).

### 2. Limitations

█ CDB filed its petition seeking a declaratory judgment and attorney's fees on June 15, 1994. Kroll filed his counterclaim for breach of the compensation agreements on September 9, 1994. CDB asserts that the four-year statute of limitations bars recovery of any payments due under the compensation agreements that accrued before September 9, 1990. *See* Tex. Civ. Prac. & Rem.Code § 16.004(a)(3) (1986). Kroll asserts that Civil Practice & Remedies Code section 16.069 precludes CDB's limitations defense. That section reads as follows:

> If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.

Tex. Civ. Prac. & Rem.Code § 16.069(a) (1997).

CDB asserts Kroll's counterclaim is not among those contemplated by section 16.069 for a number of reasons: (1) CDB sought only a declaration that the compensation agreements were invalid, not monetary damages; (2) Kroll's counterclaim was not in

opposition to a monetary demand; and (3) CDB was the nominal plaintiff merely because it filed its action first. CDB concludes that Kroll's breach of contract claim was not a true counterclaim. CDB relies on *McBryde v. Curry*, 914 S.W.2d 616 (Tex. App.—Texarkana 1995, writ denied) for this assertion.

In *McBryde*, Curry lent McBryde money under a demand note signed on May 15, 1986. McBryde named Curry as a beneficiary of his life insurance policy to the extent of his debt to Curry. McBryde died in May 1994, and Curry presented a claim for $200,000 as a creditor of McBryde based on the demand note. Because the other beneficiaries of the insurance policy disputed the claim, the insurance company filed suit and deposited the $200,000 into the registry of the court. Curry was granted summary judgment on her claim. The beneficiaries appealed, asserting Curry's claim was barred by the four-year statute of limitations. Curry asserted that her counterclaim was timely under section 16.069. The beneficiaries responded that Curry's claim was not a true counterclaim within the scope of section 16.069(a). The Texarkana court held Curry's claim was not within the scope of section 16.069 because Curry was only a nominal defendant (no other party sought relief against her) and her claim was not in opposition to a money demand by the plaintiff (the insurance company was not demanding any relief). *Id.* at 620.

Here, CDB's petition sought relief in the form of a declaratory action seeking a determination that the compensation agreements were unenforceable and attorney's fees. Kroll's counterclaim sought a determination that CDB had breached the agreements. *See Latham v. Allison*, 560 S.W.2d 481, 485 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.) (defining counterclaim as "a claim, which, if established will defeat or in some way qualify a judgment to which the plaintiff is otherwise entitled. It embraces both set-off and recoupment, and also comprehends reconvention as well as all adversary actions

by the defendant in a case."); *see also* **Black's Law Dictionary** 315 (5th ed.1979) (defining counterclaim as a "claim presented by a defendant in opposition to or deduction from the plaintiff's claim").[2] Accordingly, the trial court did not err in overruling CDB's motion for JNOV. *See generally Hobbs Trailers v. J.T. Arnett Grain Co., Inc.*, 560 S.W.2d 85, 88 (Tex.1977) (holding that if appellee's breach of contract action had been asserted in a counterclaim or crossclaim, article 5539c, the predecessor to section 16.069, would have applied); *Barraza v. Koliba*, 933 S.W.2d 164, 167–68 (Tex.App.—San Antonio 1996, writ denied) (plaintiffs filed declaratory action and asked for attorney's fees; holding: defendant's DTPA counterclaim timely under section 16.069); *ECC Parkway Joint Venture v. Baldwin*, 765 S.W.2d 504, 513–14 (Tex. App.—Dallas 1989, writ denied) (Duvall–Giles asserted that section 16.069 did not apply because its claim against ECC was not for affirmative relief but only for attorney's fees that were contingent on outcome of Baldwin's claim against ECC; holding: claim for attorney's fees is a claim for affirmative relief, and, therefore, ECC's counterclaim against Duvall–Giles not barred by limitations).

We overrule CDB's eighth issue.

## B. Kroll's Cross–Issue

Kroll asserts the trial court erred in refusing to disregard the jury's award of $1.00 for damages under the Deferred Compensation Agreement because his damages were $250,000 as a matter of law.

### 1. Standard of review

▮▮▮ Because Kroll had the burden of proof on this issue, we treat his cross-issue as asserting that the evidence conclusively establishes his damages under the Deferred Compensation Agreement at $250,000. We first examine the record for evidence that supports the finding and ignore all evidence to the contrary. *Sterner v. Marathon Oil*

---

2. **Black's** also defines "recoupment" as implying "that plaintiff has cause of action, but asserts that defendant has counter cause of action growing out of breach of some other part of same

contract on which plaintiff's action is founded, or for some cause connected with contract." *Id.* at 1146.

*Co.*, 767 S.W.2d 686, 690 (Tex.1989); *Pizzitola v. Galveston County Cent. Appraisal Dist.*, 808 S.W.2d 244, 246–47 (Tex.App.—Houston [1st Dist.] 1991, no writ). If there is no evidence that supports the finding, only then do we look to see if the contrary proposition was established as a matter of law. *Sterner*, 767 S.W.2d at 690; *Pizzitola*, 808 S.W.2d at 247. If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988); *Neese v. Dietz*, 845 S.W.2d 311, 312 (Tex.App.—Houston [1st Dist.] 1992, writ denied).

**2. Sufficiency of the evidence**

■ The Deferred Compensation Agreement provides as follows: "In the event [Kroll] is terminated for reason other than cause, [Kroll] shall be immediately vested in the Key Employee Trust and entitled to receive all of the assets therein and which thereafter accrue to such accounts." When Kroll was terminated, the trust account contained no assets. Kroll admitted he was responsible for setting up the trust account, he did not set up the account, and he deferred setting up the account on his own and "it [was his] own personal loss for having done it." CDB contends this evidence is legally sufficient to support the jury's finding that $1.00 fairly and reasonably compensated Kroll for his damages resulting from breach of the Deferred Compensation Agreement. We disagree.

Kroll's admission that he was responsible for setting up the trust account, but did not, and that it was his own personal loss for not having done so, does not negate the jury's finding that Kroll did not waive his rights under the Deferred Compensation Agreement. The fact that the trust account did not contain any assets when Kroll was terminated does not negate his entitlement to any assets that would accrue to the account.

■ A nonbreaching party is generally entitled to all its actual damages necessary to put it in the same economic position in which it would have been had the contract not been breached. *General Elec. Supply Co. v. Gulf Electroquip, Inc.*, 857 S.W.2d 591, 599 (Tex.

App.—Houston [1st Dist.] 1993, writ denied). Because the jury found that CDB's performance under the compensation agreements was not excused by Kroll's waiver or Kroll's failure to comply with a material obligation, Kroll was entitled to receive, as damages, the amount he would have received if the Deferred Compensation Agreement had not been breached.

The "Deferred Compensation Agreement" required CDB to deposit a total of $250,000 into a trust account. The trial court erred in not disregarding the jury's award of $1.00 for damages under the Deferred Compensation Agreement because Kroll's damages under that agreement were $250,000 as a matter of law.

We sustain Kroll's cross-issue.

**C. CDB's Conditional Cross–Issue**

CDB asserts that, if this Court sustains Kroll's cross-issue, Kroll's recovery of $150,000 of the $250,000 under the Deferred Compensation Agreement is barred by the statute of limitations. For the same reason we overruled CDB's eighth issue, we also overrule CDB's conditional cross-issue.

The discussion of the remaining points of error does not meet the criteria for publication, Tex.R.App. P. 47.4, and is, thus, ordered not published.

We modify the judgment below to award Kroll $250,000 under the Deferred Compensation Agreement and, as modified, we affirm the trial court's judgment.